UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR TBW MORTGAGE-BACKED
TRUST SERIES 2006-5, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES 2006-5                    PLAINTIFF


VS.                              CIVIL ACTION NO. 3:13CV132TSL-JMR


STATE BANK & TRUST COMPANY,
CROSS KEYS BANK AND HOLLY R. LOGUE                     DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on cross-motions of plaintiff
U.S. Bank National Association (U.S. Bank) and of defendants State
Bank & Trust Company (State Bank), Cross Keys Bank and Holly R.
Logue for summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure. The motions have been fully briefed and
the court, having considered the memoranda of authorities,
together with attachments, submitted by the parties, concludes
that defendants' motions should be granted and plaintiff's motion
should be denied.

The present litigation concerns a dispute between the parties
as to the priority of certain deeds of trust in favor of U.S. Bank
and State Bank on residential property located at 27 Twelve Oaks
Place, Madison, Mississippi. As gleaned from the record, the
following facts are not disputed. In 1993, Larry and Donna
Shaffer obtained a $250,000 purchase money mortgage for the

subject property from Troy & Nichols, Inc., a predecessor to Chase Manhattan Mortgage Corporation (Chase), secured by a deed of trust lien on the property.  Several years later, in 2000, the Shaffers opened a home equity line of credit (HELOC) account with State Bank in the amount of $385,000, also secured by a deed of trust on the property.  It is undisputed that at the time the Shaffers obtained the HELOC, State Bank and the Shaffers knew and intended the State Bank deed of trust lien would be second in priority to the Chase deed of trust lien.

In 2006, after the death of his wife, Larry Shaffer refinanced the Chase loan with a $450,000 loan from Hurricane Mortgage Company, Inc., alleged predecessor in interest to U.S. Bank.[1]  The loan was secured by a deed of trust on the Shaffers' home in Madison.  Proceeds of the loan were used both to pay off the outstanding balance of $ 129,686.82 on the Chase mortgage and to pay the then-outstanding balance of $253,391.44 on the State Bank HELOC.  Upon receipt of payment, Chase executed and recorded a cancellation of its deed of trust.  However, the 2000 State Bank HELOC was not closed and no request was made to cancel the State

---

[1]     U.S. Bank explains that in August 2007, Hurricane Bank assigned the note to Taylor, Bean and Whitaker Mortgage Corporation, which indorsed the note in blank to Ocwen Loan Servicing, LLC, successor in interest to American Home Mortgage Servicing, Inc., which currently holds the note on behalf of U.S. Bank.  The 2006 note will be referred to herein either as the Hurricane Bank or U.S. Bank note and/or deed of trust.

Bank deed of trust.  Mr. Shaffer thereafter continued to obtain

advances on the HELOC by using credit line checks issued by State

Bank, and over time, he ran the balance up to nearly $380,000.

By its terms, the HELOC had a ten-year term and matured on

September 14, 2010.  After the HELOC matured, Mr. Shaffer executed

a promissory note to State Bank covering the balance then owing,

along with a new deed of trust securing the loan.  Both

instruments referenced the 2000 State Bank deed of trust and

described the new deed of trust as a "renewal" of the 2000 deed of

trust.  The promissory note recited:

> I acknowledge this Note is secured by Deed of Trust on
> Residential Home and Property located at 27 Twelve Oaks
> Place, Madison, MS, being more particularly described in
> Renewal and Extension Deed of Trust, dated this date,
> and Deed of Trust dated 09/14/2000....

The deed of trust similarly recited that it was "an extension and

renewal of that certain Deed of Trust dated 09/14/2000...."

Mr. Shaffer defaulted on his note to State Bank in November

2011.  State Bank gave notice of default, and upon Mr. Shaffer's

failure to cure the default, State Bank substituted Marc McKay as

trustee on both the 2000 and 2010 deeds of trust and commenced

foreclosure proceedings pursuant to both deeds of trust.  The

property was sold at foreclosure on March 6, 2012 to SBT

Properties Corp., a wholly-owned subsidiary of State Bank, for

$381,293.48.  The following day, SBT Properties sold the property

to Harry and Holly Logue for $382,000.  The Logues financed their

purchase through Cross Keys Bank.  Harry Logue then conveyed his
interest in the property to Holly Logue.

U.S. Bank, as successor in interest to Hurricane Mortgage,
filed the present action on March 5, 2013 against State Bank,
Holly Logue and Cross Keys Bank, claiming that the foreclosure did
not extinguish its interest.  In support of its claims for relief,
U.S. Bank offers two principal theories:  novation and equitable
estoppel.  First, it claims that at the time of the foreclosure
sale, the 2000 State Bank deed of trust was void, having been
extinguished by virtue of a novation effected by the 2010 State
Bank note and deed of trust.  It claims, alternatively, that under
the doctrine of equitable subrogation, its 2006 deed of trust had,
or should have had priority over the 2000 State Bank deed of trust
based on Hurricane Mortgage's having paid off the State Bank HELOC
in 2006.  In the court's opinion, based on the undisputed facts of
record, neither of these theories is sustainable.

By statute in Mississippi, a deed of trust, once properly
filed for record, is entitled to priority according to date of
filing.  Peoples Bank and Trust Co. and Bank of Mississippi v. L&T
Developers, 434 So. 2d 699, 708 (Miss. 1983); Miss. Code Ann.
§ 89-5-5 (providing that "[e]very ... deed of trust shall take
effect, as to all creditors and subsequent purchasers for a
valuable consideration without notice, only from the time when
delivered to the clerk to be recorded; and ... with reference to

4

all instruments which may be filed for record under this section, the priority thereof shall be governed by the priority in time of the filing of the several instruments, in the absence of actual notice"). While generally speaking, payment of the money secured by a mortgage or deed of trust will extinguish it, Miss. Code Ann. § 89-1-49, a deed of trust securing a line of credit is extinguished only upon

> (a) the termination or maturity of the line of credit and the payment of all sums owing in connection with the line of credit, or (b) the payment of all sums owing in connection with the line of credit and a written request by the debtor to cancel the line of credit and the mortgage or deed of trust securing the line of credit.... [T]he requirement of a written request by the debtor may be satisfied by a prospective creditor's delivery of a document, signed by the debtor, requesting cancellation of the line of credit and the mortgage or deed of trust securing the line of credit.

Miss. Code Ann. § 89-5-21(5). This statute provides that "[a]ny mortgage ... or assignee of a mortgagee ... under a mortgage or deed of trust securing a line of credit shall ... enter satisfaction upon the margin of the record of the mortgage or deed of trust, which entry shall be attested by the clerk of the chancery court and discharge and release the same" upon the occurrence of either of these two events. Id.

In this case, Mr. Shaffer's HELOC with State Bank did mature in 2010, but there was no "payment of all sums owing" on the HELOC at that time. See Shutze v. Credithrift of Am., Inc., 607 So. 2d 55, 60 (Miss. 1992) (stating that while § 89-5-21(5) requires

5

mortgagee on line of credit to cancel its deed of trust upon its receipt of "full payment of the money due by the mortgage or deed of trust," a payment by renewal of the note does not constitute "full payment" within the meaning of the statute).[2]  Moreover, although Hurricane Mortgage paid the outstanding balance on the HELOC in connection with Mr. Shaffer's 2006 refinance loan, it is undisputed that neither Mr. Shaffer nor Hurricane Mortgage ever provided State Bank any written request or authorization by Mr. Shaffer to cancel the 2000 HELOC and/or deed of trust securing same.  State Bank thus maintains that at the time the HELOC matured in 2010, its deed of trust lien had priority over U.S. Bank's lien.  State Bank further insists that the 2010 loan and deed of trust did not constitute a novation but rather a proper renewal or extension of the HELOC and deed of trust so that at the time of the foreclosure in 2012, its 2000 deed of trust remained alive and had priority over the 2006 U.S. Bank deed of trust lien.

In simplest terms, "[n]ovation is the substitution of a new obligation for an old one, which is thereby extinguished." Schumpert v. Dillard, 55 Miss. 348, 1877 WL 7437, at *4 (Miss.

---

[2]     According to U.S. Bank, State Bank's Rule 30(b)(6) designee testified that State Bank's policy when a credit line is paid in full at maturity is to "go ahead and facilitate the Deed of Trust being released because it is paid in full, and all of the terms and conditions have been met at maturity."  Clearly, however, the deponent was referring to a situation where there is no outstanding balance on the line of credit at maturity, and not to the situation presented here, where the balance on the line of credit at maturity was "paid" by renewal of the obligation.

1877).  As understood in modern law, it "'is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by a substitution of a new creditor.'" Ainsworth v. Lee, 218 Miss. 813, 818, 67 So. 2d 905, 907 (Miss. 1953) (quoting 39 Am. Jur., p. 255, Sec. 2).  In Ainsworth, the Mississippi Supreme Court identified "three kinds of novation: (1) where the debtor and creditor remain the same, but a new debt takes the place of the old one; (2) where the debt remains the same but a new debtor is substituted; and (3) where the debt and debtor remain, but a new creditor is substituted." id. at 817-18 (citation omitted).

A novation is never presumed, Schumpert, 1877 WL 7437, at *6; thus the party claiming there has been a novation has the burden of proof to establish this.  Morgan v. Jackson Ready-Mix Concrete, 247 Miss. 863, 885-86, 157 So. 2d 772, 780 (Miss. 1963) (citation omitted).  "In order to do this, there must appear the consent of the contracting parties that the new agreement was to have this effect.  In other words, whether a novation was accomplished depend[s] on whether the parties intend[] to extinguish the old obligation by substituting the new one for it." Id. (citation omitted).  See also Lampley v. United States, 17 F. Supp. 2d 609, 617 (N.D. Miss. 1998) (stating that "one universally required

7

element of the doctrine [novation] ... is that the parties agree
that the formation of a new contract will extinguish all
obligations under a previous contract") (citations omitted).
While a novation may be either express or implied from the facts
and circumstances, in all events there must be clear proof of the
parties' intent to effect a novation. American Blakeslee Mfg. Co.
v. Martin & Son, 128 Miss. 302, 91 So. 6 (Miss. 1922). See also
Schumpert, 1877 WL 7437, at *6 (novation requires express
intention of the parties, and "[w]hen parties intend the
substitution of a new debt or obligation for an old one, their
intention to that effect should be positively declared, or, in
whatever way expressed, be made so evident as not to admit of a
doubt").

As the basis for its novation argument, U.S. Bank contends
that the October 2010 loan from State Bank to Larry Shaffer was
not a renewal or extension of the 2000 HELOC, as contended by
State Bank, but was instead "a completely new loan with new terms"
and hence constituted a novation of the 2000 HELOC which had the
effect of extinguishing the 2000 HELOC; therefore, the 2010 State
Bank deed of trust, which was indisputably second in lien priority
to the 2006 U.S. Bank deed of trust, was the operative deed of
trust and the only deed of trust that State Bank could have
foreclosed in 2012. In the court's opinion, not only has U.S.
Bank failed to show, either directly or by reasonable inference,

8

that the execution of the second note and deed of trust was intended by State Bank and Larry Shaffer as a novation, but the evidence of record clearly reflects a contrary intent.  That is, it is apparent from the evidence that the 2010 note was intended by the parties thereto as a renewal or extension of Mr. Shaffer's obligation with respect to his existing indebtedness under the HELOC.  The 2010 note was for the amount owing on the HELOC when it matured.  Further, the credit application for the 2010 note prepared by State Bank and signed by Mr. Shaffer indicated a purpose to "Renew 20025764 (originally HELOC)," and a Disbursement Request and Authorization signed by Mr. Shaffer expressly described the loan as "a secured renewal of the [HELOC]." Moreover, State Bank stamped the HELOC as "RENEWED NOT PAID."  And the 2010 deed of trust recited that it was "an extension and renewal of that certain Deed of Trust dated 09/14/2000...."

Notwithstanding these clear statements of the parties' intent, U.S. Bank points out that the terms of the 2010 loan were different from the HELOC terms in several ways, and on this basis alone concludes that the 2010 loan was not, in fact, merely a renewal or extension but rather was "a completely new loan with new terms," effecting a novation.  It notes, for example, that the 2010 note had a fixed rather than variable principal amount and a fixed rather than variable interest rate, and a different repayment term, i.e., 84 months rather than 120 months.  Also, the

borrower was different:  Larry Shaffer instead of Larry *and Donna*
Shaffer.  U.S. Bank maintains that these differences are evidence
of a *new* agreement being formed that was separate and distinct
from the one agreed to in 2000.  Clearly, however, the fact that
the 2010 note changed some of the terms of Mr. Shaffer's repayment
of his existing indebtedness does not support a finding that a
novation occurred; at all times, the debtor and the underlying
obligation remained the same.[3]  See <u>United Bank of Lakewood Nat.
Ass'n v. Jefferson Indus. Bank</u>, 791 P.2d 1250, 1253 (Colo. App.
1990) (explaining that "[p]arties to a note secured by a mortgage
may substitute a new note for the original without impairing the

---

[3]    U.S. Bank's reliance on <u>Vivion v. Grelling</u>, 837 S.W.2d
255, 258 (Tex.App.-Eastland 1992, writ den'd), as support for its
position is misplaced.  There, after executing a note and a deed
of trust for the purchase of property, the debtor transferred the
property to third parties, who executed a separate note and deed
of trust with the lenders along with an extension of the note and
deed of trust, which recited that they were assuming payment of
the original note.  <u>Id</u>. at 256.  As noted by U.S. Bank, the court
in <u>Vivion</u> did observe that the note executed by the purchasers
differed in a number of material respects from the original
debtor's note, including as to the principal amount, the interest
rate and repayment term.  <u>Id.</u> at 257.  However, while noting these
differences, the court did not identify the significance of these
differences to its conclusion that the record supported a finding
of novation.  What was probably most significant to the court's
conclusion in <u>Vivion</u> is the fact that the debtors under the new
note were *completely* different; that fact, coupled with the
difference in the loan repayment provisions, would have supported
finding a novation, particularly in view of additional evidence
that the original debtor and his purchasers believed, and had
reason to believe he had been discharged from further liability.
The factual differences between this case and <u>Vivion</u> are manifest.

security, although the terms of the two notes are not identical, so long as the original secured debt remains unpaid and there is no increase in the debt"). The court acknowledges but rejects U.S. Bank's argument that since Larry Shaffer, and not Larry and Donna Shaffer, there was a new debtor under the 2010 note. Under the 2000 HELOC, Larry and Donna Shaffer were jointly and severally liable for the debt. After Donna Shaffer's death in 2005, Larry Shaffer became the sole debtor under the terms of the HELOC; and he was likewise the sole debtor under the 2010 note. The differences in loan terms identified by U.S. Bank are not sufficient to support a finding that a novation occurred; and as U.S. Bank has suggested no other basis for its position, the court concludes that, as a matter of law, there was no novation.

Moreover, as State Bank correctly contends, regardless of whether the 2010 note was a new loan or a renewal or extension of the 2000 HELOC, the 2000 deed of trust in clear and unambiguous terms secured the obligation. In pertinent part, the 2000 deed of trust stated, "THIS DEED OF TRUST ... IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF EACH AGREEMENT AND OBLIGATION OF GRANTOR UNDER THE CREDIT AGREEMENT." It defined "credit agreement" as "the revolving credit agreement dated: September 14, 2000 ... between Grantor and Lender, *together with all renewals, extensions, modifications, refinancings, and substitutions for the Credit Agreement*." (Emphasis added). And

11

it defined "indebtedness" to include, "[i]n addition to the Credit Agreement, ... all obligations, debts and liabilities ... of Grantor to Lender, ... *whether now existing or hereafter arising*, whether related or unrelated to the purpose of the Credit Agreement." (Emphasis added).  "Dragnet clauses" such as these are fully enforceable in Mississippi.  See Whiteway Finance Co., Inc. v. Green, 434 So. 2d 1351, 1353 (Miss. 1983) (stating that although the parties "strenuously argue as to whether the 1976 note is a renewal or novation of the 1974 note, the controlling principle involved is that 'dragnet clauses' are valid and enforceable in Mississippi[,]" so that "[n]o matter what transpired between the parties in finalizing the 1976 loan and in computing the amount of that loan, absent the 1974 deed of trust being satisfied on the record, the proceeds from that loan fall within the terms of the dragnet clause in the 1974 deed of trust."); see also Shutze, 607 So. 2d at 60 (holding that by reason of dragnet clause in original deed of trust recorded and perfected in 1981, creditor's deed of trust, having been kept alive and saved from extinguishment under Section § 89-5-21, was alive and well on date of borrower's renewal, refinancing or advance and hence reached forward and secured such renewal, refinancing or advance).  No reasonable argument can be made that the 2010 note was not a renewal, extension, modification, refinancing or substitution of or for the 2000 HELOC.

12

Accordingly, regardless of how the 2010 note is characterized, the 2000 deed of trust secured the note.

There remains the question whether the 2000 State Bank deed of trust had lien priority over the 2006 U.S. Bank deed of trust. By all appearances, it does. The State Bank deed of trust was perfected in 2000, and, as the court has already noted, it was not "paid" at maturity and State Bank was never requested or authorized by Mr. Shaffer or by Hurricane Mortgage to close the HELOC and cancel the deed of trust. Nevertheless, U.S. Bank argues that its deed of trust should be accorded priority over the 2000 State Bank deed of trust under the doctrines of equitable subrogation and/or equitable estoppel. Specifically, U.S. Bank contends that under the doctrine of equitable subrogation, its deed of trust lien should be found to have first priority by virtue of Hurricane Mortgage's having paid off the existing first position liens on the property. In a related vein, it submits that State Bank should be equitably estopped from relying on § 89-5-21(5) to defeat U.S. Bank's claim to the property, since State Bank led Hurricane Mortgage to believe that the HELOC was "paid off." For the reasons that follow, the court concludes that the claim for equitable subrogation is time-barred, and that in

any event, the circumstances cited by U.S. Bank do not warrant

application of either doctrine.[4]

In <u>In re Shavers</u>, 418 B.R. 589 (Bankr. S.D. Miss. 2009), the

court described the principle of equitable subrogation:

> Mississippi has long recognized the doctrine of
> equitable subrogation in the residential loan
> refinancing context.  As explained by the Mississippi
> Supreme Court, the concept is simple:  "Subrogation is
> the substitution of one person in place of another,
> whether as a creditor or as the possessor of any
> rightful claim, so that he who is substituted succeeds
> to the rights of the other in relation to the debt or
> claim, and to its rights, remedies, or securities."
> <u>Robertson v. Sullivan</u>, 102 Miss. 581, 59 So. 846, 847
> (1912) (citations omitted).  Thus, one of the basic
> principles of subrogation is that the party seeking the
> benefit of subrogation (the "subrogee") seeks to
> exercise its rights and remedies as a successor to the
> legal rights of the party who received the benefit of
> the payment (the "subrogor").  Simply put, the doctrine
> of subrogation allows the subrogee to "step into the
> shoes" of the subrogor.  <u>See</u> <u>St. Paul Prop. & Liab.</u>
> <u>Insur. Co. v. Nance</u>, 577 So. 2d 1238, 1241 (Miss. 1991).

<u>Id.</u> at 605.  <u>Cf.</u> <u>Lyndon Prop. Ins. Co. v. Duke Levy and Assocs.,</u>

<u>LLC</u>, 475 F.3d 268, 270 (5th Cir. 2007) ("Equitable subrogation is a

doctrine whereby a surety is permitted to stand in the shoes of

the party that benefitted from its performance of the surety

obligation in order to prevent unjust enrichment on the part of a

wrongdoer who caused the surety's expense.") (citing <u>Pearlman v.</u>

---

[4]      State Bank argues that while U.S. Bank's complaint
includes counts for declaratory judgment, to quiet title and for
reformation, these are merely "disguised claims for equitable
subrogation and should be viewed as such."  U.S. Bank does not
contend otherwise.

Reliance Ins. Co., 371 U.S. 132, 136, 83 S. Ct. 232, 9 L. Ed. 2d
190 (1962)); Green Tree Servicing, LLC v. U.S. Bank Nat'l Ass'n,
N.D., 192 P.3d 1014, 1019 (Colo. Ct. App. 2007) (explaining that
"in the context of mortgages, equitable subrogation permits the
substitution of a later lienholder into the lien-priority status
of a prior lienholder," "allowing a later-filed lienholder to
leapfrog over an intervening lien and take a priority position")
(internal quotation marks and citation omitted).  U.S. Bank argues
for application of equitable subrogation on the basis that its
predecessor Hurricane Mortgage paid off Mr. Shaffer's outstanding
balance on the State Bank HELOC in 2006, and that when it did so,
both Mr. Shaffer and Hurricane Mortgage intended that Hurricane
Mortgage would have the first priority lien position.  State Bank
contends that the claim for equitable subrogation is barred by the
three-year statute of limitations in Mississippi Code Annotated §
15-1-49, and that it is without merit in any event.  In response
to the limitations argument, U.S. Bank asserts that its claim is
not governed by § 15-1-49 but rather the ten-year statute of
limitations in Mississippi Code Annotated § 15-1-9,[5] which states:

> A person claiming land in equity may not bring suit to
> recover the same except within the period during which,
> by virtue of Section 15-1-7, he might have made an entry
> or brought an action to recover the same, if he had been

---

[5]     U.S. Bank actually has cited Mississippi Code Annotated
§ 51-1-9 as applicable.  The court assumes it intended to refer to
§ 15-1-9.

15

entitled at law to such an estate, interest, or right in
or to the same as he shall claim therein in equity.

Section 15-1-7 states that

A person may not make an entry or commence an action to
recover land except within ten years next after the time
at which the right to make the entry or to bring the
action shall have first accrued to some person through
whom he claims, or, if the right shall not have accrued
to any person through whom he claims, then except within
ten years next after the time at which the right to make
the entry or bring the action shall have first accrued
to the person making or bringing the same.

In the court's opinion, U.S. Bank's position is without merit.

In O'Neal Steel, Inc. v. Millette, 797 So. 2d 869 (Miss.

2001), the Mississippi Supreme Court found it clear that

litigation is not "an action to recover land" within the meaning

of § 15-1-9 absent a possessory interest in the subject property.

Id. at 873 (stating that "'[a]n action to recover land' under ...

§ 15-1-9 presumes that the [party making the claim] has some

ownership or possessory interest in the land").  The court went on

to hold a judgment lien did not create in the plaintiff a

possessory interest in the real property, explaining that "a

judgment lien is not a property in the thing itself, nor does it

constitute a right of action for the thing; rather, it constitutes

a charge upon the thing."  Id. (citations omitted).  Likewise, it

is generally recognized that the holder of a deed of trust to a

property does not have a possessory interest in that property.

Although, technically, under a deed of trust, legal
title passes to the trustee, holders of deeds of trust

16

> do not have an ownership interest in the land, rather,
> such conveyance of title is solely for the purpose of
> security, leaving in the trustor a legal estate in the
> property as against all persons except the trustees and
> those lawfully claiming under them.  In practical
> effect, if not in legal parlance, a deed of trust is a
> lien on the property, and the deed of trust conveys
> 'title' to the trustee only so far as may be necessary
> to the execution of the trust.

Am. Jur. 2d Mortgages § 121.  See also Evans v. City of Lake

Ozark, Mo., No. 2:08-cv-04085-NKL, 2009 WL 2408381, at *4 (W.D.

Mo. Aug. 5, 2009) (stating that "[a] deed of trust is a 'lien and

nothing more,' which does not entitle its holder to the immediate

use, enjoyment, or benefit of the property.  A holder of a deed of

trust is entitled only to the right to have the debt, if not

otherwise paid, satisfied out of the property.").[6]  U.S. Bank's

claim for equitable subrogation, therefore, is not governed by the

ten-year limitations period of § 15-1-9 but rather by the three-

year statute of limitations of § 15-1-49.  The limitations period

commenced to run from "the date of payment of payments which make

[it] a subrogee...."  Neely v. Johnson-Barksdale Co., 12 So. 2d

924, 925 (Miss. 1943).  This action was filed well over three

---

[6]     U.S. Bank cites Whitefoot v. Bancorpsouth Bank, 856 So.
2d 639 (Miss. Ct. App. 2003), as holding that a lienholder's
equitable claim for reformation was subject to the ten-year
limitations period of § 15-1-9.  It contends that this court
should find that this statute applies to equitable subrogation
just as it applies to reformation.  In fact, however, while there
was some limited discussion of § 15-1-9 in *dicta* in Whitefoot, the
court did not hold that the lienholder's claim was governed by §
15-1-9.  It held that the defendant had waived the statute of
limitations by failing to timely raise the defense.

years after the payment by U.S. Bank on which it predicates its
claim for equitable subrogation.  Accordingly, its claim is time-
barred.  See Avakian v. Citibank N.A., Civ. Action No. 1:12-CV-
00139-SA-DAS, 2014 WL 346861, at *5 (N.D. Miss. Jan. 30, 2014)
(finding equitable subrogation claim barred by § 15-1-49).

    Even were the claim timely, however, the court would still
conclude that summary judgment is in order.  The court in In re
Shavers noted that "culpable negligence, or wrongful conduct, by
the party seeking equitable subrogation will bar application of
the doctrine."  418 B.R. at 608 (citing First Nat'l Bank of
Jackson v. Huff, 441 So. 2d 1317, 1319 (Miss. 1983)).  "Culpable
negligence requires something more than ordinary negligence and
generally involves a heightened indifference to, or disregard of,
the consequences of one's actions."  Id. at 610 (citing 65 C.J.S.
Negligence § 19).

    First Guaranty Title served as closing agent on behalf of
Hurricane Mortgage in connection with the 2006 loan.  From the
loan proceeds, First Guaranty sent a check to State Bank in the
amount of $253,391.44 to pay off Mr. Shaffer's then-outstanding
balance on the HELOC.  However, notwithstanding that they were
aware of the requirements of Mississippi Code Annotated
§ 89-5-21(5) for cancellation of a deed of trust on a line of
credit, neither First Guaranty nor Hurricane Mortgage took the
necessary steps to have the HELOC closed and deed of trust

18

cancelled.  That is, they did not provide State Bank with written authorization from Mr. Shaffer to close the line of credit and cancel the 2000 deed of trust, nor did they have Mr. Shaffer request that the HELOC and 2000 deed of trust be cancelled.[7]  The evidence indicates that they were not aware at the time that State Bank's deed of trust secured a line of credit; however, their ignorance of that fact was the consequence of their own failure to review the deed of trust to determine whether it secured a line of credit.  Moreover, as State Bank points out, following the closing, First Guaranty did not update the title to ensure that the 2000 State Bank deed of trust was cancelled.

A number of courts have found negligence in similar circumstances and declined to apply equitable subrogation.  See, e.g., Bank of America, N.A. v. Ping, 879 N.E.2d 665, 667 (Ind. Ct. App. 2008) (explaining that "[a] volunteer or one charged with 'culpable negligence' may not be entitled to equitable subrogation[,]" and holding that equitable subrogation was not available to a lender that paid the outstanding balance on line of credit but failed to take action to close line of credit, which was secured by a prior deed of trust); Moerequity, Inc. V. Fifth

---

[7]     In addition to the requirements of § 89-5-21(5) for cancellation of a deed of trust on a line of credit, the HELOC provided:
    If you cancel your right to credit advances under this Agreement, you must notify us and return all VALLEY EQUITY LINE CHECKS and any other access devices to us.
It is undisputed that this was not done.

19

<u>Third Bank</u>, No. C-080824, 2009 WL 1652908, at *3 (Ohio 1st Dist. Ct. App. June 12, 2009) (denying equitable subrogation because mortgagee "failed to act in conformance with reasonable business practices to ensure that the mortgage was formally closed out"); <u>Green Tree Servicing, LLC v. U.S. Bank Nat'l Ass'n</u>, 192 P.3d 1014, 1020 (Colo. Ct. App. 2007) (denying equitable subrogation where lender knew that instructions from the borrower were needed to close line of credit and thereby release prior-recorded deed of trust and yet took no action to request or instruct prior lender to close or release its line of credit); <u>Highmark Fed. Credit Union v. Wells Fargo Financial</u>, 814 N.W.2d 814, 817 (2002) (finding that lender's failure to make written demand, pursuant to state statute, for release of line of credit, whether willful, inadvertent or negligent, was sufficient reason to deny it an equitable remedy).

All of these cases involved not the acts or omissions of unsophisticated borrowers but rather of sophisticated commercial lenders.  It has been noted that

> [n]o entities are better situated to properly perfect interests in land than banks, whose purposes are to maximize profit derived from lending money and to ensure the repayment of their loans by taking an interest in a borrower's collateral.  Courts can not underwrite Defendants' business risks under the guise of equity when Defendants themselves failed to take minimal steps to ensure their interests were properly protected.

<u>In re May</u>, 310 B.R. 405, 419 (Bankr. E.D. Ark. 2004).  <u>See also</u> <u>Green Tree Servicing</u>, 192 P.3d at 1020 (explaining that court must

consider "whether the party seeking subrogation acted with knowledge, negligence, or a degree of sophistication such that application of the doctrine would be inequitable"). It is manifest that Hurricane Mortgage/First Guaranty were negligent; and in the court's opinion, particularly given their knowledge and sophistication, their acts and omissions amounted to culpable negligence.[8] Accordingly, equitable subrogation does not apply.

As indicated, U.S. Bank has also asserted that State Bank should be held equitably estopped from relying on § 89-1-21(5) to defeat U.S. Bank's claim to the property since the $263,391.44 check delivered to State Bank to pay off the HELOC in 2006 recited that it was a "payoff" and the teller receipt from State Bank included a handwritten notation, "pay-off." U.S. Bank states that with a receipt in hand marked "pay-off," no further action was

---

[8]     U.S. Bank contends that while there are no Mississippi cases clearly defining culpable negligence, other courts that have done so in the context of equitable subrogation have held that culpable negligence "necessarily implies the failure to perform some duty, and it is not the failure of duty to one's self, but to another, that constitutes culpable negligence." Trustmark Nat'l Bank v. Deutsche Bank Natl' Trust Co., No. W2009-01658-COA-R3-CV, 2010 WL 3269978, at *5 (Tenn. Ct. App. Aug. 19, 2010) (citation omitted). U.S. Bank submits that its predecessors in interest cannot have been found culpably negligent as they "owed no duty to State Bank when its loan was closed and written authorization to close the HELOC account would be obtained solely for the benefit of U.S. Bank." However, even assuming for the sake of argument that this is an appropriate standard, as State Bank notes, while the requirements of § 89-1-21(5) may be for the benefit of a subsequent lender, they are also for the benefit of the lender on the line of credit so that it knows when to close the line of credit and prevent future advances.

ever taken to ensure that the 2000 State Bank HELOC account was closed and the deed of trust cancelled.  Equitable estoppel is appropriate to "hold a person to a representation made or a position assumed where otherwise inequitable consequences would result to another who, having the right to do so under all of the circumstances of the case, has in good faith relied thereon and has been misled to his injury."  PMZ Oil Co. v. Lucroy, 449 So. 2d 201, 206 (Miss. 1984) (internal quotation marks and citation omitted).  "A party asserting equitable estoppel must show (1) that he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct."  Id. (citations omitted).

U.S. Bank argues that State Bank should not be permitted to use § 89-5-21(5) as a shield, and should be held to its conduct in issuing the payoff receipt.  Clearly, however, given the nature of a line of credit, U.S. Bank cannot avoid the consequences of its predecessor's failure to comply with the explicit requirements of § 89-1-21(5) based on nothing more than a payment receipt that contained the words "pay-off."  The payment received from Hurricane Mortgage did "pay off" the full outstanding balance on the HELOC; but without cancellation of the HELOC as required by

§ 89-1-21(5), there was nothing to prevent Mr. Shaffer from obtaining additional advances on the HELOC, which is precisely what he did.

U.S. Bank last argues that the foreclosure sale should be declared void for having been conducted in contravention of statutory requirements.  Specifically, it notes that whereas Mississippi Code Annotated § 89-1-57 provides that a foreclosure sale "may be made ... *for cash*" (emphasis added), SBT Properties, which was not the mortgagee, purchased the property at the 2012 foreclosure sale not with cash but rather via "credit bid."[9]  U.S. Bank argues that as a result, the trustee's deed to SBT Properties was void.  In response to U.S. Bank's motion as to this claim, State Bank submits that U.S. Bank has offered no authority to establish that the credit bid was improper under the circumstances (and specifically, the circumstances that (a) SBT Properties is a wholly-owned subsidiary of State Bank and (b) State Bank received the benefit of the sale, i.e., the debt was reduced by the amount of the credit bid), and that this claim should thus fail on the merits.  Primarily, though, it argues that the court should disregard U.S. Bank's claim that the trustee's deed be declared

---

[9]    "Credit bidding is the practice of allowing a foreclosing lender to bid on the property at the auction."  LOL Finance Co. v. Easy Money Catfish Co., 842 F. Supp. 2d 1019, 1021 (N.D. Miss. 2012) (citation omitted).

void based on an improper credit bid since no such claim is made in the complaint.  Indeed, a thorough review of the complaint reveals no mention of any irregularity in the conduct of the foreclosure sale.  U.S. Bank states in its reply that its complaint includes "assertions about the validity of the foreclosure sale and SBT's status as a bona fide purchaser."  It points out in this regard that count one specifically seeks a declaratory judgment that "SBT Properties is not a bona fide purchaser and that the foreclosure sale of March 6, 2012 is void to the extent it involved the 2000 Deed of Trust."  However, the only factual basis alleged in the complaint for challenging the foreclosure sale relates to the validity and/or priority of the 2000 State Bank deed of trust.  There is no allegation relating to, much less claim for relief based on the manner in which the sale was conducted.[10]  The court recognizes that Federal Rule of Civil Procedure 8 requires only "notice pleading."  <u>See</u> Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief").  To satisfy this standard, a

---

[10]    The court notes, too, that SBT Properties has not been made a party.  <u>See</u> <u>Sananap v. Cyfred, Ltd.</u>, No. CVA07-006, 2009 WL 4544805, 9 (Guam Terr. Nov. 25, 2009) (stating that "[a]s a general rule, those who purchase properties at a foreclosure sale must be party to the lawsuit seeking to invalidate those sales") (citations omitted).

plaintiff is not required to plead specific facts.  However, the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L. Ed. 2d 80 (1957)).  "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." <u>Anderson v. U.S. Dept. of Housing and Urban Dev.</u>, 554 F.3d 525, 528 (5th Cir. 2008).  There is nothing in the complaint that would even arguably put defendants on notice of this claim, and therefore, the court rejects U.S. Bank's request for relief on the basis of an improper credit bid.[11]  <u>See</u> <u>O'Neal v. Ketchum</u>, No. 2013-CA-00460-COA, 2014 WL 2860667, at *4 (Miss. Ct. App. June 24, 2014) (finding that the plaintiff failed to raise issue in lower court of the validity of the foreclosure sale on ground that no actual sale was conducted since no bids were received, notwithstanding that the plaintiff had alleged that the trustee's deed was "completely void ab initio by virtue of the failure of the trustee to follow the laws made and provided for

---

[11]    The deadline for amendments to pleadings passed more than a year ago.

[the] purpose of foreclosing on deeds of trust in the [S]tate of Mississippi").

Based on all of the foregoing, the court concludes that the motions of State Bank and of Cross Keys and Holly Logue should be granted[12] and the claims of U.S. Bank dismissed with prejudice, and it is so ordered.  It follows that U.S. Bank's motion for summary judgment is denied.

A separate judgment will be entered in accordance with Rule 56 of the Federal Rules of Civil Procedure.

SO ORDERED this 15th day of July, 2014.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[12]     In addition to adopting the arguments asserted by State Bank in support of its motion for summary judgment and in opposition to U.S. Bank's motion, Cross Keys Bank and Holly Logue seek summary judgment on the basis that the Logues were bona fide purchasers without notice.  While the court finds it unnecessary to reach this argument in light of its conclusions herein, the court does note that in response to the evidence presented by Cross Keys Bank and Holly Logue to demonstrate that the Logues were bona fide purchasers without notice, U.S. Bank has failed to present sufficient evidence to warrant a trial on this issue.

26